## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| **SAMI IBN-QUEEN**, | : |
| 3801 Elkader Road | : |
| Baltimore, MD  21218 | : |
| | : |
| Plaintiff, | : |
| v. | : **CIVIL ACTION NO.** |
| | : (Jury Trial Demanded) |
| **THE T.I.M.E. ORGANIZATION, INC.** | : |
| 2901 Druid Park Drive, C200 | : |
| Baltimore, Maryland 21215 | : |
| | : |
| Serve: Resident Agent | : |
| Lamont Ellis | : |
| Druid Park Drive, C200 | : |
| Baltimore, MD 21215 | : |
| | : |
| **TIME ORGANIZATION LLC** | : |
| 2901 Druid Park Drive, C200 | : |
| Baltimore, Maryland 21215 | : |
| | : |
| Serve: Resident Agent | : |
| Floyd Briscoe Wright | : |
| 110 East 25th St. | : |
| Baltimore, MD 21218 | : |
| | : |
| **JAMES JOHNSON**, individually, | : |
| 1129 Scott St. | : |
| Baltimore, MD 21230 | : |
| | : |
| **LAMONT A. ELLIS**, individually, | : |
| 7 Yellow Barn Court | : |
| Pikesville, MD 21208 | : |
| | : |
| Defendants. | : |
| _____ | : |

## <u>COMPLAINT</u>

Plaintiff, Sami Ibn-Queen ("Mr. Ibn-Queen" or "Plaintiff"), by and through his

undersigned counsel, hereby brings this Complaint against The T.I.M.E. Organization, Inc.,

TIME Organization LLC, (collectively referred as "TIME"), James E. Jones ("Mr. Jones"), and Lamont A. Ellis ("Mr. Ellis")(collectively "Defendants"), by averring as follows:

## INTRODUCTION

1.     The present lawsuit is a make-whole action to address willful and deliberate wage theft, and involves claims for unpaid regular and overtime wages and record keeping and wage hour infractions in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., ("FLSA"); and/or the Maryland Wage and Hour Laws, MD. CODE, LAB. & EMPL. § 3-501 *et seq*. ("MWHL"); and/or the Maryland Wage Payment and Collection Laws, MD. CODE, LAB. & EMPL. § 3-501, *et seq*. ("MWPCL"), an FLSA retaliatory discharge claim and common law claims for breach of contract and *quantum meruit*.

2.     In addition, the lawsuit includes claims for willful and deliberate misclassification of Mr. Ibn-Queen by his employer for forcing him to be classified as an independent contractor, though he was an employee.

3.     Defendant organization has yet to account for the economic damages it has caused due to the misclassification, including, but not limited to, costs of forming a limited liability company, increased tax burdens and lost wages and overtime.  It is expected that when TIME files its federal tax returns for the 2020 calendar year, Mr. Ibn-Queen will have additional claims for violation of 26 U.S.C. § 7434 of the Internal Revenue Code, which will be added at that time.

4.     Consistent with the allegations herein, Mr. Ibn-Queen seeks damages, enhanced damages, pre and post-judgment interest, reasonable attorneys fees and costs, and other relief as these causes permit.

5.     These claims and the facts in support are referred to individually or, at times, collectively as the "Lawsuit."

2

## PARTIES

6.    Mr. Ibn-Queen is an adult resident of the State of Maryland.  At all relevant times to this Lawsuit, Mr. Ibn-Queen was an "employee" within the meaning of the FLSA, MWHL, and the MWPCL.

7.    Defendants TIME Organization, Inc. is a non-stock, not-for- profit Internal Revenue Code §501(c)(3) corporation formed under the laws of the State of Maryland.  TIME Organization LLC is a limited liability company organized in the State of Maryland with its address in Baltimore, Maryland.  The TIME entities provide professional mentoring and mental health services, have the same Chief Operating Executive and have no apparent difference in locations of services or the type of service provided.

8.    TIME provides a wide array of professional and rehabilitative mental health, substance abuse, behavioral services and treatment programs for adults, children and adolescents in the greater Baltimore metropolitan region with offices at 2901 Druid Park Drive, Suite A210, Baltimore, MD 21215, and other regional offices.

9.    TIME represents that it is licensed by the State of Maryland and it operates, and obtains funding through patient-based private and government sponsored insurance as well grants and contracts administered through federal, state and local government authorities.  TIME is accredited by the Commission on Accreditation of Rehabilitation Facilities ("CARF").

10.    TIME is engaged in the production of goods for interstate commerce and/or uses and handles goods that have moved in interstate commerce as such terms are defined in the FLSA, and is an "employer" subject to the FLSA, MWHL, and the MWPCL within the meaning of those statutes.

3

11.    Defendants Mr. Johnson and Mr. Ellis are residents of the State of Maryland. Mr. Ellis is the CEO and owner of TIME and Mr. James operates and manages TIME.  Mr. Johnson and Mr. Ellis controlled, oversaw and supervised the terms and conditions of employment (including decisions concerning methods, classification and rates of pay) for Mr. Ibn-Queen and others.  Mr. Ellis and Mr. Johnson are the alter-ego of TIME and/or otherwise are individually liable as an "employer" as the term is defined by the FLSA, MWHL and the MWPCL.

12.    Alternatively, Mr. Ellis and Mr. Johnson acted through unified operation and/or common control with TIME and/or constituting an "enterprise" within the meaning of the FLSA 29 U.S.C. §203(r)(1).

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this Lawsuit pursuant to 28 U.S.C. § 1331, as this action is being brought under the FLSA.   The Maryland statutory and common law claims set forth herein are so related and intertwined with the claims under the FLSA so as to form a part of the same case and controversy and vests this Court with supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

14.    Mr. Ibn-Queen has signed a consent form to pursue this Lawsuit and assert claims arising under federal and state law, attached hereto as Exhibit 1.

15.    Venue is proper in the Baltimore Division of the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this Lawsuit occurred in this District, and because TIME conducts business and maintains its principal place of business in this Division.

## FACTS

### Hiring and Duties

16.     Mr. Ibn-Queen began full time employment with TIME on or about February 10, 2020 as an IEP Aide.  At the time of his hiring, Mr. Ibn-Queen was given additional duties as a One-on-One Aide.

17.     At the time of his hiring, Mr. Ibn-Queen reported directly to Michael Knight ("Mr. Knight").

18.     As an IEP Aide, Mr. Ibn-Queen was primarily tasked with providing support, assistance, and monitoring to certain assigned public school students with special needs, particularly delinquent adolescents with behavioral and academic problems who resided in-group homes and foster care.  Most of his duties took place within the school environment.

19.     Mr. Ibn-Queen's primary duties as an IEP Aide were largely manual in nature and involved meeting and escorting students at certain Baltimore City Public Schools and other places, recording maladaptive behaviors and strictly following any applicable behavioral management plans that were in place.

20.     Mr. Ibn-Queen's duties did not involve the exercise of meaningful discretion or independent judgment with regard to important business matters.  Furthermore, Mr. Ibn-Queen was not a learned professional who required licensure by any state or local authority for the performance of his primary duties.  In fact, upon information and belief, TIME's only required educational qualification for the position of IEP Aide was a high school diploma or GED equivalent.

### Classification and Rate of Pay

21.     At the time of his hire, Mr. Ibn-Queen was classified as an hourly non-exempt

5

employee, meaning that he was entitled to receive an hourly regular rate of pay, and time and a half overtime pay for each hour worked each week in excess of 40 hours in any workweek.

22.     Mr. Ibn-Queen's regular rate of pay at the time of his hire was $12.00 dollars per hour worked.

School Closure and Stay-at Home Executive Order

23.     On or about Friday, March 13, 2020, Governor Hogan issued an Executive Order closing all public schools within Maryland for period of two weeks due to the emerging COVID-19 pandemic.  This closure order was extended and on March 30, 2020, Governor Hogan issued a statewide "Stay at Home" Executive Order requiring the closure of all schools and non-essential businesses.

24.     TIME exempted itself from the Stay at Home Order by self-identifying as an "essential business," citing guidelines from the Federal Substance Abuse and Mental Health Services Administration, and Center for Substance Abuse Treatment.  TIME specifically designated Mr. Ibn-Queen as an "essential employee."

25.     Due to the statewide closure orders, TIME's special needs children and adolescents with demonstrated behavior problems could no longer report in person to school each day.  This caused hardship to the group and foster home guardians who were accustomed to having TIME IEP Aides take the children and adolescents to school and out of their homes for up to twelve (12) hours per day.

Reassignment to James Johnson

26.     Due to the school closures, TIME reassigned Mr. Ibn-Queen to its internal mentoring division, directly reporting to Mr. Johnson.

27.     Mr. Johnson determined work schedules and assignments for employees at TIME, including Mr. Ibn-Queen.  Upon information and belief, Mr. Ellis and Mr. Johnson controlled the finance and operations of TIME.  Mr. Ellis and Mr. Johnson held and exercised the authority to hire, fire, and classify employees.

28.     Following his reassignment, Mr. Ibn-Queen held the position of One-on-One Aide but was also called a Therapeutic Mentor.

29.     After his reassignment, Mr. Ibn-Queens' rate of pay did not change and his wages remained at $12 dollars per hour worked.  He remained classified as an hourly non-exempt employee, such that he was entitled to receive an hourly regular rate of pay, plus time and a half overtime pay for each hour worked each week in excess of 40 hours in any workweek.

<u>Duties Following Reassignment</u>

30.     As a One-on-One Aide, Mr. Ibn-Queen was specifically tasked with manually picking-up his assigned special needs children or adolescents from their group or foster homes and taking them somewhere for up to 12 hours a day or longer, during which time he had to watch and monitor them. At times, Mr. Ibn-Queen was required to stay with them all day and overnight, and was not afforded break times.

31.     Mr. Ibn-Queens' duties as a One-on-One Aide were similar to his duties as an IEP Aide, except that he no longer monitored adolescents in a school environment due to the school closures.

32.     Mr. Ibn-Queen's duties as a One-on-One Aid did not involve the exercise of meaningful discretion or independent judgment with regard to important business matters. Furthermore, Mr. Ibn-Queen was not a learned professional that required licensure by any state or local authority for the performance of his primary duties.

7

33.     TIME did not provide a vehicle to Mr. Ibn-Queen for purposes of transportation, but required him to use his personal vehicle for the convenience of his employer.

34.     Mr. Ibn-Queen was never paid or reimbursed for time, mileage or gas associated with operation of his vehicle during his employment and TIME did not "reasonably approximate" and pay Mr. Ibn-Queen for the expenses that he incurred in the performance of his duties, as required by wage and hour laws and FLSA interpretive opinion letters.

35.     In the spring of 2020, while in Baltimore, Mr. Ibn-Queens' vehicle was burglarized and set on fire.  He reported this incident to Mr. Johnson and asked for a vehicle to use.  In response, Mr. Johnson retorted "you make enough money, rent one."   When Mr. Ibn-Queen again raised the issue of fuel costs, Mr. Johnson responded "if you can't handle it find another job."

36.     In order to meet and perform the duties of his position and as instructed by Mr. Johnson, Mr. Ibn-Queen was required to rent a vehicle for several months from Enterprise Rent-A-Car of Baltimore, and incurred $5,131.10 dollars in rental charges, excluding gas, that was never reimbursed or paid for by TIME.  Insofar as he bore all of these costs personally, these vehicle and car rental expenses reduced his effective rate of pay below the applicable federal and state minimum wage.

37.     Due to the COVID-19 pandemic, most public places such as parks, libraries, museums, theaters, shopping malls, restaurants and similar locations were closed to the public, meaning that Mr. Ibn-Queen could not take his special needs children and adolescents to these places.

38.     As a result, Mr. Ibn-Queen was directed by his supervisor at TIME to drive the children and adolescents around in the car or keep them in his vehicle, which was not an

optimum environment for these children and adolescents.

39.     Mr. Ibn-Queen complained to Mr. Johnson about the wellbeing of these youths, and mentioned he would call the Division of Social Services ("DSS") to report what was happening.

40.     Each time Mr. Ibn-Queen raised these concerns, Mr. Johnson informed him that he faced termination if he reported anything to DSS.

Willful Refusal to Pay Overtime

41.     Beginning in March of 2020 and continuing throughout the summer and fall of 2020, Defendants suffered and permitted Mr. Ibn-Queen to work in excess of forty (40) hours each week and failed to pay him for all time worked and failed to pay him overtime pay.

42.     On several occasions, Mr. Ibn-Queen complained to Mr. Johnson and Erica Bostic at Human Resources ("Ms. Bostic"), that he was supposed to receive overtime pay for his hours worked, and that they were violating wage and hour laws by not paying him overtime.

43.     Mr. Ibn-Queen's complaints in this regard were a form of protected activity, as he was reasonably reporting and opposing the wage practices of TIME he in good faith believed to be illegal.

44.     Every time Mr. Ibn-Queen raised the issue of overtime, Mr. Johnson would angrily respond that TIME does not pay overtime.

45.     Defendants knew that Mr. Ibn-Queen performed work that required overtime pay. Ms. Bostic, in particular, had a background in human resources and knew that TIME was violating wage and hours laws but was, nevertheless, complicit in assisting them to carry out their scheme.

Forced Misclassification to Independent Contractor

46.     Recognizing that they were violating federal and state wage and hour laws for failure to pay overtime, Mr. Johnson first informed Mr. Ibn-Queen in late April or early May that they intended to re-classify him from an employee to an independent contractor.

47.     To give TIME further cover for these illegal actions, Mr. Johnson insisted that Mr. Ibn-Queen form a limited liability company, presumably to lessen the risk associated with not paying overtime and make it seem as if he was in a business-to-business contracting relationship with TIME when he was not.

48.     When Mr. Ibn-Queen objected to this improper demand, TIME illegally withheld his paychecks.  Mr. Johnson thereafter told him he would have to agree to be an independent contractor if he wanted to keep his job and be paid his past due and ongoing wages.

49.     In early May of 2020, Mr. Ibn-Queen involuntarily spent considerable unreimbursed time researching how to form an entity and contacting the Maryland State Department of Assessments and Taxation ("SDAT").

50.     On or about May 7, 2020, Mr. Ibn-Queen formed an entity in Maryland known as "Sami Services Limited Liability Company," and incurred unreimbursed expenses and filings fees.   Mr. Ibn-Queen formed this entity in order to be paid by TIME.

51.     When TIME converted Mr. Ibn-Queen to an independent contractor, the parties did not sign an actual contract or documents reflecting that he was an independent contractor. TIME did not create documents supporting this fake construct until months later.

52.     Although Mr. Ibn-Queen was internally classified and paid as an independent contractor, he was still required to perform the same duties as when he was classified as an employee for TIME.

53.     As a result of being involuntarily reclassified as an independent contractor, Mr. Ibn-Queen was no longer eligible to participate in any of the employment benefits for employees that are advertised on TIME's website, such as paid life insurance and 403B retirement plans and contributions or even sick and vacation leave.

54.     As a result of the fraudulent misclassification, TIME also stopped making required federal and state withholding from Mr. Ibn-Queen's paychecks.

<u>Mr. Ibn-Queen is Forced to Sign an 'Independent Contractor Agreement'</u>

55.     On or about August 4, 2020, Mr. Ibn-Queen was forced to sign an Independent Contractor Agreement ("IC Agreement") with TIME.   Mr. Ibn-Queen did not draft this document and was not given the opportunity to have it reviewed by legal counsel.  Instead, he was told to sign it or be fired.

56.     While the IC Agreement purports to cast Mr. Ibn-Queen as a "contractor," the IC Agreement itself retains for TIME all-important indicia of control and direction over Mr. Ibn-Queen's activities as if he were an employee.

57.     The IC Agreement still designates Mr. Ibn-Queen as a One-on-One Aide, and TIME retains all rights to direct his working activities, administer "performance evaluations," and provide him with compensation on a "per hour" basis.  Further, the IC Agreement allowed TIME to discharge and terminate Mr. Ibn-Queen simply upon the giving of 30 days written notice.

58.     Even though Mr. Ibn-Queen signed this agreement, he remained an employee of TIME under all applicable wage and hour statutes, interpretive regulations and binding case law in this jurisdiction.  In short, the IC Agreement was a means for Defendants to skirt the applicable wage laws.

11

Retaliatory Discharge; Breach of Contract

59.    On September 14, 2020, TIME discharged Mr. Ibn-Queen, citing a list of false and pretextual reasons for termination relating to the performance of his duties.

60.    Mr. Ibn-Queen's discharge, however, was retaliatory and because of his complaints of wage violations and stated refusal to comply with TIME's misclassification scheme, which had illegally converted him to a so-called independent contractor.

61.    In addition, TIME did not afford Mr. Ibn-Queen 30 days of advance notice of termination under the IC Agreement, nor did TIME pay Mr. Ibn-Queen the value of this 30-day notification period upon his discharge.

62.    Subject to further review of TIME's records, attached as Exhibit 2 to this Complaint is a Chart setting forth Mr. Ibn-Queens's hours worked and unpaid overtime pay based on the allegations in this Lawsuit.

63.    Subject to further review of Defendant's records, Mr. Ibn-Queen is owed a minimum sum of $ 8,460.00 dollars in unpaid regular and overtime premiums, not including treble and liquidated damages, which are sought herein.

64.    In addition, Mr. Ibn-Queen is owed reimbursement of his rental car charges incurred in service to TIME due to TIME's failure to reimburse for reasonable approximations of his vehicle expenses used in connection with his duties; and/or for the liability caused by making his vehicle and car rental expenses cause his regular rate of pay to fall below the applicable federal and state minimum wage.

65.    Mr. Ibn-Queen is owed all other damages caused by the illegal misclassification of his position, including but not limited to the lost value of any welfare and employment benefits to which he lost eligibility; the time and costs spent researching and forming an limited

liability company; loss of the tax contributions and additional tax burdens.

66.    The refusal and failure to pay wages and overtime and other violations outlined in this Lawsuit was not the result of a bona fide dispute and was done willfully and intentionally, justifying an award of liquidated, enhanced and treble damages under applicable federal and state law.

**COUNT ONE**
**FAIR LABOR STANDARDS ACT**
(Failure to Pay Minimum and Overtime Wages; Unreimbursed Expenses)
(All Defendants)

67.    Plaintiff incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

68.    At all times relevant to this Lawsuit, Defendants were "employers" and Plaintiff was an "employee" within the meaning of the Fair Labor Standards Act ("FLSA").

69.    At all times relevant to this Lawsuit, Mr. Ellis and Mr. Johnson had control to make TIME take actions pertaining to implementation and approval of payroll practices and the fraudulent misclassification scheme, resulting in Defendants' failure to pay Plaintiff the required minimum wages and overtime rate of pay for hours worked in excess of 40 hours per workweek.

70.    Throughout Mr. Ibn-Queen's employment, Mr. Ellis and Mr. Johnson had the power to hire and fire employees, including Plaintiff.  They supervised and controlled Plaintiff's work schedule and his conditions of employment, and determined Plaintiff's rate of pay, and classification.

71.    Plaintiff was a covered, non-exempt employee under the FLSA and its implementing regulations and, as such, was entitled to be paid wages and overtime pay for all hours worked consistent with the requirements of the FLSA.

72.    Defendants willfully and/or intentionally failed and/or repeatedly refused to pay

to Plaintiff all wages and overtime wages due and owed under the FLSA for the period set forth in this Lawsuit.

73.     Defendants' actions and inactions were in willful disregard for the rights of Plaintiff under the FLSA, and not the result of a good faith or bona fide dispute.  Because of their actions and inactions, Plaintiff suffered a loss of wages.

74.     Plaintiff is owed unpaid minimum wages and overtime wages by Defendant as allowed under 29 U.S.C. §§ 206 and 207 in an amount consistent with the allegations herein, or as the result of a review of Defendant's records and at the trial of this action.

75.     In addition to any judgment awarded for minimum and overtime wages, Plaintiff is entitled to an award of liquidated damages equal to the amount of damages, in addition to pre and post-judgment interest, costs of the action, and reasonable prevailing party attorney's fees. 29 U.S.C. § 216(b).

**COUNT TWO**
**MARYLAND WAGE AND HOUR LAW**
(Failure to Pay Minimum and Overtime Wages)
(All Defendants)

76.     Plaintiff incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

77.     At all times relevant to this Lawsuit, Defendants were "employers" and Plaintiff was an "employee" within the meaning of the Maryland Wage and Hour Laws ("MWHL").

78.     At all times relevant to this Lawsuit, Mr. Ellis and Mr. Johnson directed and controlled actions taken by TIME and were the individuals who designed, implemented, and/or approved the payroll practices and fraudulent misclassification scheme, resulting in Defendants' failure to pay Plaintiff the required minimum wages and overtime rate of pay for hours worked in excess of 40 hours per work week.

14

79.     Throughout Mr. Ibn-Queen's employment, Mr. Ellis and Mr. Johnson had the power to hire and fire employees, including Plaintiff.  They also supervised and controlled Plaintiff's work schedule and his conditions of employment, and determined Plaintiff's rate of pay, and classification.

80.     Defendants willfully and/or intentionally failed and/or repeatedly refused to pay to Plaintiff the minimum wages and overtime due and owing under Maryland law for the period set forth in this Lawsuit.   Defendants' actions and inactions were in willful disregard of the rights of Plaintiff under the MWHL, and not the result of a good faith or bona fide dispute. Because of their actions and inactions, Plaintiff suffered a loss of wages.

81.     Plaintiff is owed unpaid minimum and overtime wages by Defendants as allowed under the MWHL in an amount consistent with the allegations herein, or as the result of a review of Defendants' records and at the trial of this action. In addition, Plaintiff is entitled to pre and post-judgment interest, costs of the action, and reasonable prevailing party attorney's fees.  MD. CODE, Labor and Employment § 3-427.

## COUNT THREE
## MARYLAND WAGE PAYMENT AND COLLECTION LAW
(Failure to Pay "Wages")
(All Defendants)

82.     Plaintiff incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

83.     At all times relevant to this Lawsuit, Defendants were "employers" and Plaintiff was an "employees" within the meaning of the Maryland Wage Payment and Collection Act ("MWPCL").

84.      Defendants violated the MWPCL by failing to pay all "wages" to Plaintiff for the work that he performed prior to termination on or before the day that he would have been

paid if he had not been terminated.  MD. CODE, LAB. & EMPL § 3-505.  Defendants also violated the MWPCL by failing to pay wages for the 30-day notification period that Plaintiff was entitled to as provided for in his contract.  Defendants also violated the MWPCL by not paying the costs of Mr. Ibn-Queens' benefits and rental car and vehicle expenses, which reimbursement qualifies as "wages" under the MWPCL.

85.     At the time of his separation, on or about September 14, 2002, Plaintiff performed work on behalf of Defendants and was entitled to and had earned the full value of his earnings.

86.     Defendants willfully violated the MWPCL.  As noted throughout this Complaint, Plaintiff was deliberately not paid earned wages and overtime as alleged herein, and which can be further supported upon a review of Defendants records and at the trial of this action.  The refusal to pay such earnings was not the result of a bona fide dispute, and Plaintiff is entitled to treble damages in an amount not exceeding three times the unpaid wages, as well as pre and post judgment interest, reasonable attorney's fees and other costs. MD. CODE, LAB. & EMPL. § 3-507.2(b).

## COUNT FOUR
## (BREACH OF CONTRACT)
### (Defendants - TIME)

87.     Plaintiff incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

88.     TIME and Mr. Ibn-Queen were subject to a written IC Agreement, which provided that Mr. Ibn-Queen was entitled to 30 days advance notice of discharge, as well as attorney fees under the IC Agreement.

89.     Mr. Ibn-Queen' contract was materially breached when he was not given 30-days advance notice of discharge, and was not paid the agreed upon 30-days of pay in lieu of notice under the IC Agreement.

90.     Mr. Ibn-Queen has been harmed as a direct consequence of the material breach of the contract.

### COUNT FIVE
### QUANTUM MERUIT
(Defendants TIME- Common Law)

91.     Mr. Ibn-Queen incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

92.     Alternatively, Defendants had a quasi-contractual obligation to compensate Mr. Ibn-Queen with the value of all wages, benefits, unreimbursed expenses, and sick leave that were due to him as an employee of TIME, because of his employment, and Mr. Ibn-Queen conferred benefits upon TIME by working on their behalf.

93.     TIME had an appreciation or knowledge of the benefits conferred upon them by Mr. Ibn-Queen.

94.     Despite the foregoing, TIME retained the value of the wages, benefits, unreimbursed expenses, and sick leave under circumstances that makes it inequitable for TIME to retain the value of these benefits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, on all causes of action and seeks the following relief:

A.      Unpaid regular wages and overtime, a minimum amount set

forth on <u>Exhibit 2</u> to this Complaint, which amount is expected to

increase as further evidence is gathered in this action;

B.      Unreimbursed car rental and/or vehicle expenses, the value of any

lost benefits, and costs expended due to being forced to become an

independent contractor;

C.      The value of loss of Employer tax contributions;

D.      Liquidated damages under the FLSA;

E.      Treble damages under the MWPCL;

F.      Reasonable attorney's fees and costs;

G.      Pre and post-judgment interest; and

G.      Such other penalties and monetary, declaratory, and equitable

relief as the nature of his causes allow, including a declaration

that Defendants misclassified Mr. Ibn-Queen intentionally as an

independent contractor, and all make whole relief stemming from the

misclassification.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff demands a trial by jury in this action.

Respectfully submitted

By: _____/s/_____
        Ruth Ann Azeredo (MD 16175)
        Law Office of Ruth Ann Azeredo LLC
        1997 Annapolis Exchange Parkway
        Suite 300
        Annapolis, Maryland 21401

18

Tel: (410) 558-1915
Fax: (410) 558-19177
ruthazeredo@comcast.net7

-and-

Timothy W. Romberger
Fed. Bar No. 014408
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C.  20046
(202) 248-5053
timromberger1@comcast.net
Attorneys for Plaintiff

Dated:  December 2, 2020